## DESHOTELS
### v.
### LIBERTY MUT. INS. CO.
#### Civ. A. No. 3845.

United States District Court
W. D. Louisiana, Opelousas Division.
Nov. 5, 1953.

Albert Tate, Jr., Tate & Fusilier, Ville Platte, La., for plaintiff.

J. J. Davidson, Jr., Davidson, Meaux, Onebane & Nehrbass, Lafayette, La., for defendant.

DAWKINS, District Judge.

This is a demand for damages by the widow on behalf of herself and her minor son against defendant insurance company, alone, by direct action permitted under a state statute and growing out of a collision between an insured truck and a motorcycle ridden by deceased, David Deshotels, husband of the plaintiff and father of said minor.

The only allegations of negligence are the emphasized clauses of the following quoted extracts from the complaint:

"6.    That on or about February 3, 1952, near Reeves in Allen Parish, on U. S. Highway 190, a truck owned and operated by the Gaylord Container Corporation or its agent or employee, *negligently drove into* David Deshotels who was entering into or had entered into said highway at its intersection with Louisiana Highway 251.

\*    \*    \*    \*    \*    \*

"8.    That, in the alternative, plaintiff alleges that if there should

be found any contributory negligence on the part of the aforesaid decedent, her beloved husband, which contributory negligence plaintiff denies, then and in that event said Gaylord Container Corporation or its agent or employee, *had the last clear chance to avoid the accident since he saw, or should have seen, the aforesaid David Deshotels, and could have and should have thereafter avoided injuring this husband and father, fatally injured in the aforesaid accident."*

In its answer, defendant made certain defenses, the pertinent portions of which are likewise emphasized in the following extract from the Answer. "All * * * allegations of Paragraph 6 (as to negligence) of the Complaint are denied." The response to Paragraph 8 is quoted in full:

"In answer to the allegations of Paragraph 8 of the complaint, defendant admits that David Deshotels was guilty of negligence which was the direct and proximate cause of the accident. All other allegations of Paragraph 8 of the complaint are denied."

Defendant admitted coverage under the policy contract. It denied the charges of negligence, pleaded contributory negligence on the part of the deceased and averred that the truck of its insured "was proceeding west on Highway 190 at a reasonable and proper rate of speed, and on its right hand side of the highway * * * when, without any warning whatsoever, a motorcycle operated" by deceased "entered the intersection from the north at an excessive and unlawful rate of speed and in a careless and reckless manner"; that the truck driver "immediately applied its brakes and turning to his left in an effort to avoid striking said motorcycle but" deceased "continued to drive his said motorcycle directly in the path of the truck and was struck * * * notwithstanding the driver * * * did everything within his power to avoid the said accident."

It further averred that the driver of the truck "had the right of way" but the operator of the motorcycle "approached the * * * intersection at a careless and negligent rate of speed, without stopping, without having his motorcycle under control, and without keeping a proper lookout; and that the operator of the truck was guilty of no negligence whatever." Defendant then elaborated specifically the act of contributory negligence in some seven separately numbered paragraphs and then charged that deceased had the last clear chance to avoid the accident. Finally it alleged that:

"XIX. Defendant further avers that the complaint filed herein fails to state a claim against the defendant upon which relief can be granted."

The case was tried before my late associate, Judge Gaston L. Porterie, and a jury. The latter, on January 14, 1953, returned a verdict "for the defendant, Liberty Mutual Insurance Company". A judgment in accordance with the verdict was signed at Alexandria, La., on March 17, last, and filed by the Clerk on the 19th of that month. Ten days later, March 27th, plaintiff filed a motion for a new trial upon the following grounds:

"1. Because the learned trial Judge erred in declining plaintiff's request for charge, which request and action thereon are as follows: Plaintiff requested that the Court charge that if the jury upon the evidence presented found that Reeves was an unincorporated community, then that the speed limit applicable was that of 25 miles per hour at the time and place of the accident under La.R.S. 32:225, and that if the jury found that the defendant's assured at the time of the accident was speeding in excess of this speed limit, and that the excess speed was the proximate cause of the accident and of the death of plaintiff's decedent, then that the jury should find for the plaintiff.

"2. Because the learned trial Judge erred in giving the special charges requested by the defendant, especially III, V, VI, VII (VIII was not given), IX, X, XI, XIII, did not add the proviso, 'unless you find the defendant's insured had the last clear chance to avoid the accident, as I have defined elsewhere'; and because in his general charges, the learned trial Judge initially stated that if the jury found the decedent, David Deshotels, was guilty of negligence, the plaintiffs could not recover even if the defendant's insured was negligent, without adding the proviso as to the 'last clear chance' doctrine.

"3. Because the learned trial Judge, over the remonstrance of counsel, asked plaintiff's surveyor witness, Alvin Curole, as to which traffic had the right of way at the intersection where the accident occurred and permitted him to answer, thus throwing undue emphasis upon this legal conclusion and in addition thus permitting the admission of prejudicial opinion testimony; that the learned trial Judge further permitted similar questioning by defendant's counsel of each witness as to who had the right of way at the time of the accident or at the intersection where the accident occurred; that the constant admission of this irrelevant, incompetent, and inadmissible opinion evidence was extremely prejudicial to plaintiff's case with the jury, since customarily lay opinion accords to the 'right of way' greater weight than other factors involved, which in the present case involving application of the last clear chance doctrine despite the admitted right of way of defendant was fatal to plaintiff's case with the jury.

"4. Because the learned trial Judge in plaintiff's counsel final argument to the jury in reply to defendant's counsel interrupted plaintiff's counsel who was calling attention to the 25 mile per hour speed limit under La.R.S. 32:225 as the legislative speed limit provided in similar circumstances, although stating that the Court was not going to charge said speed limit because Reeves lacked approximately fifteen persons of the 150 thought necessary by the trial Court to such charge, with the assertion that a 25-mile speed limit was not at all applicable, and that the only speed limit applicable was a 40-mile speed limit; but that such argument was proper under La.R.S. 32:227, providing for a speed limit 'reasonable and proper under the circumstances', and that at this particular time just before the case went to the jury and especially since plaintiff's chief argument had been based upon the fact that even though the truck was proceeding under 40 miles per hour, its speed was not reasonable and proper the trial Court's interruption was extremely prejudicial to plaintiff's case, and constitutes reversible error."

In the meantime, on March 24, 1953, Judge Porterie died.

On May 11th, some six days before the retirement of the writer became effective on the 17th, plaintiff filed the following petition:

"The petition of Juelene Howell Deshotels, to file the above and foregoing action without payment of costs, present or future, or giving bond for costs, according to the provisions of Title 28, Article 1915, United States Code, with respect represents:

"That she is executing this affidavit in compliance with said Article 1915, Title 28; that she filed this suit to recover for damages resulting from the death of her husband, and the father of their child, and that after trial on the merits, there was a jury verdict in favor of defendant; that she desires to obtain a new trial of this matter or to prosecute an appeal from the judg-

ment on the merits; that she is unable because of poverty and lack of means to pay the present or future costs of this action, or to give bond for costs; that accordingly, she requests that this Honorable Court permit her to file this future suit without prepayment of fees and costs or security therefor; that in further confirmation of this request, her total assets are a Beauty Parlor Equipment in the value of Fifteen Hundred Dollars ($1500.00), upon which about Three Hundred Fifty ($350.00) is owed, and that she earns approximately One Hundred Dollars ($100.00) per month for support of herself, her child, and her mother-in-law, and that she and her attorneys were forced to spend the sum of Nine Hundred Thirty Dollars ($930.00) in court costs and to obtain expert opinions, etc., in the trial of this matter on the merits, which is above her net worth; that insurance money received after death of her husband was used to pay $3500.00 to Louis Deshotels, advanced to establish decedent's business, and for affiant to secure her education as Beautician, except for about Seven Hundred and No/100 ($700.00) Dollars deposited in March, 1952, in the Tutorship of Van Deshotels, Jr., as his net share of the insurance proceeds, which monies cannot be withdrawn for purposes of this suit, since this is not an expense for a minor's estate authorized by the Laws of Louisiana; that she desires to prosecute all further actions in this suit under the provisions of the aforesaid Statute of the United States Code."

It was supported by the affidavit of the plaintiff and one Ashland Manuel, to the effect that because of her poverty, she was unable to pay "present or future costs", or to give bond therefor. The matter was brought to the attention of the writer by the Clerk, who was instructed to inform counsel that "it would be necessary to have a transcript of the evidence or further information concerning the case before he would be in a position to consider the order".

Thereafter, under date of September 4th, defendant's counsel opposed the granting of permission to proceed further in forma pauperis, first on the ground that the plaintiff had gone through the trial to final verdict without seeking such relief and the present motion "comes rather late"; that the Court could not determine whether the order would be justified without a transcription of the note of evidence; and that "the entire record in this case will show that not only were the statements and situations referred to in the application for rehearing and new trial without any prejudicial effect * * * but that likewise there were many such situations which could have had exactly the opposite effect insofar as defendant is concerned * * *".

In response to defendant's letter the Court wrote both counsel as follows:

"It is my suggestion that you check as carefully as you can to see whether the facts are stated correctly approximately in order to save further efforts and hearings with respect to the plaintiff's financial condition. If she has no means to pay the costs of transcribing the note of evidence in this case and cannot reasonably raise the same, then it appears that she would fall into the category of one having the right to litigate at the expense of the Government or without the prepayment of costs until it is determined who shall ultimately bear the same.

"However, this depends upon whether there is any merit in her case because the Court has some discretion in the matter, I believe, and could not be expected to approve the incurring of a large expense in a matter which would have no reasonable chance of success. Unfortunately, this case was tried before Judge Porterie and a jury, the latter rendering a verdict in favor of the

defendant, and the Judge who was familiar with the facts as developed in the trial of course has passed on. I know there would probably be controversy between opposing counsel as to what the record when transcribed would show but it does occur to me that the plaintiff might make a statement of her contention somewhat at length and in detail and thus permit the defendant's counsel to answer it, including particularly any portion of which is claimed cannot be supported by the transcript of the note of evidence.

"I would like to dispose of this motion since it was submitted to me before the swearing in of my successor, in order to help with the extremely crowded docket with which he is now confronted. It is true that he would be just as well off insofar as any knowledge of the case is concerned as I am and I would certainly not want to sit in a re-trial if the verdict of the jury and judgment of the Court was set aside.

"Therefore, if counsel on either side think it is reasonably possible for me to have sufficient information in the manner suggested to enable me to act upon the motion to be permitted to litigate without cost and that there is a reasonable basis for the motion for a new trial, then I will endeavor to hear it. If something of this kind cannot be done, then I may be compelled to pass it on to the Judges who will ultimately take the places of Judge Porterie and myself."

The suggestion was approved by each side and the Court now has before it letters by the attorneys stating their respective contentions both as to the facts developed on trial and the law.

### Plaintiff's Position

Counsel for plaintiff concedes that deceased "was apparently oblivious of the approaching of the truck", which it would seem must be construed to mean that he was not keeping a careful look-out before entering the paved highway. He next states that expert witnesses swore if the truck driver had been proceeding at the lawful rate of speed permissible where the accident happened, to wit, 25 miles per hour, and had applied the brakes on reaching a point "where it was possible to perceive the approaching motorcyclist down the gravel road * * * the truck could have been stopped in advance of the intersection * * *", and would have avoided hitting the motorcyclist. Plaintiff claims the truck was being driven between 35 and 40 miles per hour, and "was accelerating at the time of the accident"; that "the brakes had been applied about 50 feet in advance of the intersection" and the truck "came to rest almost 100 feet from the point of impact", or within approximately 150 feet from where they were applied.

### Plaintiff's Contention as to the Law

1. "The first legal question at issue between the parties was the question of whether the charge of the trial Court should have been to the effect that the applicable speed limit was 25 miles per hour at the time and place of the accident under La.R.S. 32:225 (see plaintiff's supplementary written request for instruction No. 3), rather than 40 m. p. h. as charged.

"The plaintiff desired this instruction and predicated her case upon this contention that the community of Reeves was an unincorporated community, and based this upon the fact that the population surrounding the area was fairly dense, that the community included a post office, church, railroad station, various stores, a school, etc., and that it had formerly been incorporated. The trial Court was originally disposed to grant the instruction, but upon argument in advance of submission of the instructions, counsel for defendant called the attention of the trial Court to La.R.S. 33:52, providing for the incorporation of an unincorporated settlement, which also

provides that the minimum number of inhabitants shall be 150. The counsel for plaintiff called the attention of the trial Court to La.R.S. 33:-231, showing that a municipality may not be dissolved unless it has less than 100 inhabitants under said statutes.

"The evidence indicated that the population of the municipality was approximately 135 individuals. My notes showed a greater figure, but Judge Porterie was probably correct in stating that the testimony was to this effect.

"The contention of the plaintiff is that the speed limit for unincorporated municipalities apply to any populated area having the characteristics of a community or town, without regard to the precise nose count of the population, which as your Honor can readily see could raise nice questions of territorial extent, etc.; for instance, in the present case regarding the unincorporated community as having a larger area than that of the 135 or so inhabitants at the cross-roads, a count of 150 could easily be reached.

"However, in the event that the defendants' contention that a nose count test should be applied is correct, we rely upon the fact that incorporated communities may contain a population of from 100 to a greater number, and the undisputed evidence is that Reeves contains over 100 inhabitants.

2. "The second very serious contention of the plaintiff is that the trial Court admitted improper, inadmissible, and prejudicial testimony concerning the right-of-way at the intersection in question. The trial Court itself asked the engineer who had made the survey of the cross-roads the direct question: 'who had the right-of-way', to which counsel of plaintiff objected. The trial Court permitted the witness to answer this question, and thereafter each witness was asked by the defendant the question as to which vehicle had the right-of-way at the intersection. Since the lay mind very often fastens upon a simple question, such as right-of-way, and disregards the other elements of liability, such as the last clear chance, we submit that this is extremely prejudicial conduct, for which we are entitled to a new trial. There are a number of authorities to the effect that this opinion testimony is irrelevant, incompetent, and inadmissible.

3. "The other serious question raised is that the learned trial Judge in granting defendants charges as to negligence or contributory negligence of the plaintiff, did not add the proviso allowing the plaintiff to recover in the event the defendant's insured had the last clear chance to avoid the accident."

### Defendant's Position

Defendant's counsel agree "in general as to the facts surrounding the accident" stated by plaintiff and added that the gravel road intersected Highway 190 "in a little place which is referred to as Reeves" but was "unable to agree with all of the suggestions and conclusions drawn from the testimony". It is further claimed by defendant that the truck was proceeding along U. S. paved Highway 190 on a "Sunday morning at a very reasonable rate of speed according to all of the witnesses" who estimated it at "approximately 30 miles per hour"; that plaintiff's husband was on a motorcycle on a gravelled road which made a T-intersection with the highway; * * * that there was or had been a stop sign on the side of this road indicating "that the driver on the gravelled road should stop before entering the paved highway"; and that the undisputed evidence showed the deceased failed to stop or slow down "or turn either to the right or to the left, but, on the contrary, drove from the gravelled road straight on to the pavement directly into the path of the oncoming truck without slackening speed and without swerving in any di-

62

rection or making any attempt whatsoever to avoid the accident".

**Defendant's Contention as to the Law**

Defendant's position is that there was no proof to disclose that the community known as Reeves had ever been within the category of a village, having a minimum of 150 inhabitants, as defined by La. LSA–R.S. 33:341, to wit:

"Municipal corporations are divided into three classes: cities, towns, and villages. Those having five thousand inhabitants or more, are cities; those having less than five thousand and one thousand or more inhabitants, are towns; *and those having less than one thousand and one hundred and fifty or more inhabitants, are villages.*" (Emphasis by the writer.)

and that its actual population did not exceed 135 individuals. For these reasons he claims the speed limit was that provided "outside of any town or village", or 40 miles per hour, as fixed in La. LSA–R.S. 32:225, to wit:

"No person shall operate any freight carrying vehicle upon the highways of this state *outside of any town or village not incorporated in excess of forty miles per hour*, or in excess of twenty-five miles per hour within or through any town or village not incorporated." (Emphasis by the writer.)

Defendant's counsel does concede that Judge Porterie "correctly refused to charge that the speed limit for trucks at the point where the accident occurred was a maximum of 25 miles per hour", but told them it was 40 miles per hour. He further admits, in effect, that the trial judge allowed highway officers and others to testify, over plaintiff's objection, that the "U. S. paved highway had the right of way over the intersecting gravelled roads". However, defendant contends the evidence supported this charge.

**Opinion**

The first alleged error of law, according to plaintiff, was the Court's "refusal to charge that 25 miles per hour was the (maximum) lawful speed at the intersection", as fixed by the last-quoted section of the revised statutes, for a village.

The requested charge No. 3 is quoted as follows:

"The speed limits for open highways is different than the speed limit for trucks proceeding through unincorporated towns and villages.

"Under any circumstances no person shall operate any vehicle on any highway at other than a reasonable and proper speed under the circumstances, or at a speed endangering the persons or property of others, and any such violation renders the truck driver or operator of the vehicle prima facie at fault and responsible for any accident proximately caused by such operation. In determining the speed limit applicable at the place where the accident occurred, in what is called the community of Reeves, the jury may take into consideration the number of houses, the population surrounding the section, and the presence or absence of the various institutions in the immediate locality that characterize a community, such as a school, railroad station, post office, church, various stores, etc. I must caution you that the presence of one or more of these institutions in the immediate vicinity alone would not characterize this vicinity or community as an unincorporated town or village within the meaning of the statutes regulating the speed of motor vehicles; but if you found that the presence at the time of the accident of these congregated in one vicinity, together with the residences of the inhabitants, constitute this vicinity in your mind as a village, even though this village is not incorporated under the laws of Louisiana I instruct you that you must as a question of fact determine that the place of the accident was situated in an unincorporated village or town and that

you must then apply the law regulating the speed limit in unincorporated towns and villages at the time of the accident which as I have previously instructed you was twenty-five (25) miles per hour.

"If however you determine of these institutions and residences does not constitute this place to be a village or community in your mind, then I instruct you that the speed limit in force at the time of the accident for the truck driven by the defendant was forty (40) miles per hour provided that it was a reasonable and proper speed under the circumstances, and a speed not endangering the persons or property of others.

"Authority: Louisiana Revised Statutes Title 32 S 225 and 227."

█ Of course, the violation of a statute or ordinance fixing a maximum speed for a vehicle is prima facie negligence, but it must be the proximate cause or one of the proximate causes of the collision. The same is true of contributory negligence. As stated earlier, the plaintiff apparently admits the deceased was guilty of negligence, in not seeing the on-coming truck which struck him, when there was nothing to prevent it. There further does not appear to be any dispute that deceased rode onto Highway 190, one of the main paved highways of the State, without stopping or slackening his speed, immediately in front of the truck covered by defendant's policy. If this was the case, then his own negligence continued down to the moment of impact, and would prevent recovery unless the evidence disclosed a situation for the application of the doctrine of the last clear chance, in which event the speed of the truck would have had little to do with the matter.

█ The court and the jury, in the absence of positive proof to the contrary, could take notice of the fact that traffic on such a main highway has the right of way over vehicles entering it from gravelled side roads, and testimony of highway officers and others that this was true would amount to nothing more than the statement of a commonly known fact. So the question then is what were the rights and duties of the parties at this intersection? Plaintiff was required, not only because vehicles on this through highway had the right of way, but by regard for his own safety, and as a matter of common sense, not to enter it until he ascertained whether there was danger from on-coming traffic in either direction, and if he failed to do so, as seems to be admitted, he was guilty of contributory negligence. On the other hand, the driver of the truck was required to also keep a lookout, with more vigilance in a populated area and to have his car under reasonable control to be able to stop it when confronted with danger; but he was not bound to actually stop at this T-intersection, or to assume that deceased would enter it until the latter's conduct, speed, etc., was such as to cause a reasonable man to think he would not observe this universal rule.

█ If the truck was moving at a rate of 30 to 40 miles per hour, in excess of what plaintiff claims was permissible in a village, and this prevented its being stopped when it became evident the motorcycle would continue onto the highway and at the same time deceased failed to stop for the right of way road and to look for traffic thereon or to see the approaching truck, the negligence of each was thereby continued down to the moment of impact. In such circumstances the negligence of the deceased would not be passive like one asleep on a railroad track, but active, participating, and continuing down to the collision, the same as that of defendant. If this was what happened plaintiff's own negligence was one of the proximate causes of the accident. It was for the jury to decide these issues of fact, which they evidently found in favor of the defendant. The writer has had the court reporter to transcribe the charge of Judge Porterie, consisting of 25 pages, and it appears that he covered the law of the case fully. On the subject of the last clear chance,

the following is quoted from the charge, beginning on page 9 and running to the end of the first paragraph on page 13, to wit:

"Another item of law which the Court gives you as applicable in this case, in the event you find the facts to fit it, is this:

" 'You are instructed that under the law of this state, the driver of a vehicle entering a main paved public highway from a side road is required to yield the right of way to all vehicles approaching on the paved public highway and must come to a full stop before entering the paved public highway. I, therefore, charge you that the defendant's truck traveling on U. S. Highway 190 had the right of way as to all persons approaching the highway from the intersecting gravel road, and it was the duty of David Deshotels to stop and yield such right of way to the defendant's truck. If you find from the evidence that David Deshotels did not yield the right of way to the defendant's truck but drove into the highway carelessly, negligently and without making a sufficient and careful examination as to whether or not he was safe in so doing, he was then guilty of negligence, which negligence will prevent any recovery by the plaintiff herein, and in such case your verdict must be for the defendant, Liberty Mutual Insurance Company.'

"But there again I instruct you that you have to consider all of the other facts of the case.

"You are further instructed as follows:

" 'That even though you may find and believe from the evidence in this case that the plaintiff's husband, David Deshotels, was negligent and careless in entering into said public highway, and crossing same under the facts and circumstances in the case, still if you further find and believe from the preponderance of the evidence that the defendant's truck driver saw, or by the exercise of a reasonable degree of care could have seen, the plaintiff's husband, David Deshotels, in a perilous position entering in and upon said public highway where he would be liable to be struck by said truck, and if you further find that there was time for the truck driver to thereafter have stopped said truck or slackened the speed thereof, or changed the course thereof, with due regard to the safety of the truck driver in said truck from jack-knifing or overturning before striking the said David Deshotels, and that this would or could have avoided striking, injuring, and killing the said David Deshotels, but that said truck driver negligently failed to do so, and as a direct result thereof said truck was caused to strike David Deshotels, injure and kill said David Deshotels, and further if you find that at the time thereof the said Julene Howell Deshotels was the wife of this plaintiff, then you cannot find for the defendant insurance company on the ground that the said David Deshotels himself was negligent in so placing himself in such position of peril, and if you so find the facts to be so by the clear preponderance of the evidence, your verdict should be for the plaintiff.'

"You are further instructed that it is not necessary to the exercise of due care on the part of a driver of a truck that he anticipates that the driver of a motorcycle or other vehicle will violate the law by driving into a recognized paved highway from an intersecting gravel road without stopping or exercising due care.

"The driver of a vehicle driving on a right of way street or road, and approaching an intersecting gravel road has the right to assume the persons who are approaching on the gravel road, will obey the law and yield to him the right of way, and in assuming that such persons using

the intersecting road, will do so with ordinary care and will observe the rules of the road as established by law. Applying this to the present case, if you find as a fact that Johnny Grant, the driver of the Gaylord truck, was driving on a paved public highway and that said highway had the right of way over an intersecting gravel road on which David Deshotels was operating his motorcycle, then Johnny Grant was justified in assuming that David Deshotels would yield the right of way and observe care and caution and not enter the right of way road directly in front of the truck.

"You are further instructed, even though the defendant, David Deshotels, through his own negligence was in a position of peril, plaintiff may recover if the one who injured David Deshotels discovers, or by the exercise of ordinary care could have discovered the approaching motorcycle in time to have avoided the injury. The defendant would not be relieved of liability by reason of the fact that the truck driver did not see him, but the law holds him to the responsibility of seeing what he could have seen by keeping a reasonably vigilant and proper lookout. You are instructed that the mere fact that a motorcycle from a side road runs in front of a moving motor vehicle so suddenly that the driver had no notice of danger does not necessarily relieve a defendant from liability, if the defendant after being confronted with such motorcycle had a reasonable opportunity to take action which would avoid a collision and he failed to do so. There still remains the question whether the negligent driving of the automobile made it impossible for the driver to avoid the accident after seeing the motorcycle, or whether, by the exercise of reasonable care, such driver could and should have realized that the motorcycle would not stop and should have seen the

motorcycle in time to avoid the injury. That is under the doctrine of last clear chance."

From this review of the matter, the court is convinced there is no basis for granting a new trial, and hence no need to order transcribing of the evidence for that purpose. If an appeal is taken, plaintiff can apply to the Court of Appeal for authority to prepare the record and to proceed further without prior payment of costs. In its disposition of the application, that court can, if it sees fit, have the record examined in this ruling set up in the original.

The motion to proceed further in forma pauperis is denied.